UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LARRY ABNEY and CYNTHIA ABNEY**                                **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO.1:07CV711 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**        **DEFENDANTS**

## MEMORANDUM OPINION

The Court has before it the motion [135] of Defendant E. A. Renfroe & Company, Inc. (Renfroe) for sanctions under 28 U.S.C. §1927 and under the Mississippi Litigation Accountability Act of 1988 (MLAA), §§11-55-1 et seq. Miss. Code Ann. (1972). Renfroe asserts that the plaintiffs have made "baseless and abusive" claims against it, and Renfroe seeks an award of all the costs, expenses, and fees (presumably attorneys' fees) associated with the defense of this action. Renfroe is seeking similar relief in eighty-eight other cases. Renfroe has not yet itemized its claims or identified the expenses it has incurred.

### Two Preliminary Matters

Before I discuss the merits of the Renfroe motion, there are two issues I must address: 1) the identity of the persons who may be subject to sanctions in this case, and 2) the identity of the persons who may be entitled to seek sanctions.

1. Plaintiffs in this action were represented by the Scruggs Katrina Group (SKG), a joint venture composed of The Scruggs Law Firm, P.A.; Barrett Law Office; Nutt & McAlister, P.L.L.C.; and Lovelace Lawfirm, P.A. Renfroe has recognized, however obliquely, that the pleadings and the litigation strategy in this case (and the other cases in which Renfroe is seeking the imposition of sanctions) were under the control of the SKG, and not the individual plaintiffs. In light of this undisputed reality, I would not consider it appropriate to impose sanctions on the individual plaintiffs, and I will consider the imposition of sanctions only on the members of the SKG. Throughout this opinion, I will discuss the actions taken in this litigation as the actions of the SKG, even though those actions were taken on behalf of the individual plaintiffs. Sanctions may be imposed upon attorneys following withdrawal as counsel with respect to matters that occur during the course of their representation. *Wyssbrod v. Wittjen*, 798 So.2d 352 (Miss.2001).

2. Renfroe has asked the Court to take the expenses of its two owners, Gene and Jana Renfroe (the owners), into consideration as part of any sanctions award. Renfroe is asking the Court to make an award of sanctions to it, the corporation, for losses or expenses incurred by the owners.  The owners did not appear in this action, relying on their contention that this Court did not acquire personal jurisdiction over them.  Renfroe's request is anomalous in that the owners rely on the validity of the corporate form for one purpose (ascertaining the scope of this Court's personal jurisdiction) while Renfroe asks the Court to disregard the corporate form for another (the assessment and calculation of sanctions).  The corporate form will be respected in this action because there is no reason it should be disregarded for any purpose. Accordingly, in all sanctions motions submitted by Renfroe, the costs and expenses incurred by the individual defendants will not be taken into consideration.

## Pleadings and Theories of Recovery

This action was filed on June 20, 2007.  Plaintiffs are claiming benefits under a homeowners insurance policy issued by State Farm Fire & Casualty Company (State Farm).  Exhibit A to the complaint is a form State Farm homeowners policy that does not contain a copy of the declarations page of the plaintiffs' policy, and the complaint does not otherwise identify the plaintiffs' policy number, the location of the insured property, or the limits of coverage.

In addition to their primary contract claim, the plaintiffs in this action (and in many other actions filed by the SKG) allege that following Hurricane Katrina State Farm, acting in bad faith and acting in concert with the adjusting firms and engineering firms under its direction and control, wrongfully denied legitimate claims for property damage covered under State Farm's homeowners policies.  These separate actions allege a broad based conspiracy to systematically underpay legitimate property damage claims. None of these cases has proceeded beyond the pleading stage, and there has yet to be an adjudication of the merits in any of these actions.

The original complaint in this action was filed on June 20, 2007.  Renfroe was not named as a defendant in the original complaint, but the original complaint alleged a right of action against "John Does 1 - 10" who were identified in the fourth numbered paragraph of the complaint as "entities [who were] affiliated with [State Farm] and/or have acted in concert with [State Farm] and whose identities are currently unknown, including *inter alia* engineering companies, adjusting companies, contractors, insurance agents and individuals employed by these entities."  Renfroe was one of the adjusting firms engaged by State Farm to evaluate property damage claims following Hurricane Katrina. The original complaint makes specific allegations of misconduct by Renfroe in paragraphs 21and 26. The original complaint makes it clear that Renfroe may be among the John Doe Defendants 1 - 10.

The original complaint identified a separate lawsuit, *Glenda Shows, et al. v. State Farm Mutual Automobile Insurance Company, et al.*, Civil Action No. 1:07cv709 WHB-LRA, filed by the SKG on behalf of 23 other State Farm policyholders. The complaint in *Shows* alleges a cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961 - 1968 (RICO). The original complaint in this action states that in these 23 other cases "enough investigation and discovery has been obtained to demonstrate that a RICO Act conspiracy and enterprise led by State Farm damaged them." (Original Complaint, Unnumbered Second Paragraph of the Preamble).

The original complaint in this action also states that "approximately 206 individual cases substantially similar to this case [the case at bar]" were simultaneously being filed by the SKG against "State Farm and other entities." In this additional group of 206 cases the complaint states: "[t]he investigation and discovery related to the plaintiffs herein and other individual plaintiffs filing today has not proceeded far enough for them at this time to be able to meet the rigorous requirements for pleading a RICO Act complaint . . ." (Original Complaint, Unnumbered Third Paragraph of the Preamble, emphasis in the original).

The amended complaint filed in this action on December 13, 2007, added Renfroe and the owners as defendants. The amended complaint alleges that Renfroe (and the owners individually) acted to "aid and abet" State Farm's alleged misconduct. Renfroe filed only two pleadings after being named as a defendant and before the SKG voluntarily dismissed the claims against Renfroe and the owners on January 30, 2008: an entry of appearance by its counsel on December 19, 2007; and a motion for an extension of time to file its answer on January 16, 2008. This voluntary dismissal was accomplished under F.R.Civ.P. 41(a), and it was not necessary that Renfroe file an answer to the amended complaint.

### The Context in Which This Action Arose

The determination whether to make a claim directly against Renfroe rested with the SKG, and this decision was made against a factual background that amounted to a virtual litigation war between the SKG and State Farm. This war has included, so far, three phases. In the first, the SKG fired the opening salvo on *ABC's 20/20* after two former Renfroe employees, Cori and Kerri Rigsby (the Rigsby sisters), provided copies of Renfroe/State Farm claims files to Richard Scruggs, the lead attorney in the SKG. The SKG conspiracy theory is based upon the statements of the Rigsby sisters and the SKG's interpretation of the claims documents the Rigsby sisters took from Renfroe. The echoes of that opening shot reverberate yet in courts in both Mississippi and Alabama.

After considerable acrimonious litigation, the second phase of this litigation war saw State Farm and the SKG settle some 200 individual claims and then make common cause by jointly presenting to the Court a proposal for a very broad settlement of all the remaining claims against State Farm.  This massive settlement proposal was made in the case styled *Woullard v. State Farm Fire & Casualty Co.*, Civil Action No. 1:06cv1057 LTS-RHW.  When State Farm and the SKG declined my request for additional information concerning this proposed settlement I was unable to approve it, and it was ultimately withdrawn.  That is when the third and current phase of the war began, and it was during this third phase that Renfroe was brought into this litigation as a named defendant.

The linchpin of Renfroe's argument in support of its motion for sanctions is that it was not the adjusting firm that handled the plaintiffs' (the Abney's) claim.  Renfroe asserts that the allegations of the amended complaint are therefore groundless and evidence of sanctionable misconduct by the SKG.  In order to determine whether this is established in the record, I must consider this complaint not in isolation, but in the context of this entire litigation.  To carry forward the military analogy, I cannot consider this skirmish in isolation, but only in the context of the larger battle represented by the eighty-three cases in which Renfroe was named as a party, and ultimately in the context of the still larger war between State Farm and the SKG.

## The Merits of Renfroe's Motion

Based on the record before me, I cannot say that at the time the amended complaint was filed the SKG's allegations against Renfroe were frivolous.  Renfroe has not offered any substantial evidence in support of its motion that would enable me to make a finding that the allegations the SKG made against it were devoid of evidentiary support or fabricated from whole cloth.  Renfroe was admittedly one of the major adjusting firms engaged by State Farm after the storm.  The Rigsby sisters, who have been barred as witnesses because of their financial arrangement with Richard Scruggs, have testified by deposition to acts of Renfroe that they personally witnessed and, in some instances, in which they participated.  This testimony, accepted as true and considered in the light most favorable to the SKG plaintiffs as a group, i.e. the State Farm policyholders represented by the SKG, were, in my opinion, sufficient to withstand a motion to dismiss under F.R.Civ.P. 12(b)(6).  These statements and documents, accepted as true and considered in this light, are therefore sufficient, in my opinion, to support the initial good faith assertion of a cause of action against Renfroe for its participation in the concerted and widespread misconduct the SKG alleged.

## Mississippi Substantive Law Concerning Civil Conspiracy

In light of the allegations that State Farm, Renfroe, and many others acted in concert to achieve an improper and illegal goal, i.e. the systematic underpayment of State Farm policyholders' legitimate claims for storm damage, I cannot say, as a matter of law, that at the time the amended complaint was filed, the SKG had no hope of

succeeding on the merits of their clients' complaints, including the one at bar. Mississippi law recognizes a cause of action for civil conspiracy, defined as "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully," *Roussel v. Hutton*, 638 So.2d 1305 at 1315 (Miss.1994); *Gallagher Bassett Services, Inc. v. Jeffcoat,* 887 So.2d 777 (Miss.2004).  The elements of a civil conspiracy are 1) two or more persons or corporations; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as the proximate result.  *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So.2d 777 at 786 (Miss.2004).  If the SKG could prove the misconduct they alleged, and if the SKG could prove that this misconduct was pervasive enough to have affected State Farm's entire claims evaluation process, Renfroe could not avoid liability to any plaintiff who was damaged by this misconduct, even if Renfroe did not provide the adjustment services for that particular plaintiff's claim.  In a civil conspiracy like the one the SKG alleged, all the participants may be held liable for any damage attributable to the conspiracy. *Southern Bus Lines v. Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees*, 38 So.2d 765 (Miss.1949).

## Standards for the Imposition of Sanctions

The types of sanctions Renfroe is seeking are not appropriate just because a case is weak or proof of the merits of the claim may be difficult or doubtful.  These sanctions are reserved for cases in which it is clear that claims have been made without any hope of success and for improper and abusive purposes.

The MLAA provides that an award may be made against any party or his attorney. *Foster v. Ross*, 804 So.2d 1018 (Miss.2002).  The MLAA provides a remedy for "frivolous, groundless . . . , or vexatious" law suits, and it applies to pleadings and claims made "without substantial justification."  MLAA §11-55-3 Miss. Code Ann. (1972).  With respect to initial pleadings, this standard is substantially the same as the standard that applies to the imposition of sanctions under F.R.Civ.P. 11 and M.R.Civ.P. 11, but the MLAA and 28 U.S.C. §1927 impose a continuing duty to abandon a claim if it later proves to be ill founded. §11-5-55 Miss. Code Ann. (1972); *McBride v. Meridian Public Imp. Corp.*, 730 So.2d 548 (Miss.1998); *In re Fankboner*, 632 So.2d 493, 498 (Miss.1994).  The determination whether sanctions are appropriate is to be made on consideration of the facts known at the time the pleading at issue was filed.  Cf. *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1024 n.18 (5th Cir.1994); *Eatman v. City of Moss Point*, 809 So.2d 591 (Miss.2000); *Bean v. Broussard*, 587 So.2d 908 (Miss.1991).

Sanctions under the MLAA are not appropriate if the plaintiff (or his counsel), objectively speaking, had some hope of success at the time the claim at issue was filed. *Choctaw, Inc. v. Campbell-Cherry-Harrison-Davis and Dove*, 965 So.2d 1041 (Miss.2007); *Stevens v. Lake*, 615 So.2d 1177, 1184 (Miss.1993).  There is no hope of

success when a defendant has a complete defense to the claim, such as the bar of a statute of limitations, *Tricon Metals & Servs.,Inc. v. Topp*, 537 So.2d 1331 (Miss.1989), or when the bar of collateral estoppel applies. *Richardson v. Audubon Ins. Co.*, 948 So.2d 445 (Miss.2006). Sanctions under the MLAA have been awarded when, following a dismissal of the original complaint for failure to state a cause of action, a plaintiff filed an amended complaint making essentially identical allegations against the same defendants. *Triplett v. Brunt-Ward Chevrolet, Oldsmobile, Pontiac, Buick, Cadillac, GMC Trucks, Inc.*, 812 So.2d 1061 (Miss.2001). Sanctions have been refused, even in circumstances where the plaintiff was asserting a right that had been judicially declared invalid, because the plaintiff had a "hope" that the judgment of the court invalidating the right he was asserting would be reversed on appeal. *Smith v. Malouf*, 597 So. 1299 (Miss.1992). Sanctions have been imposed on a plaintiff in a personal injury action whose inclusion of the other driver's employer as a party defendant was based solely on "speculation or guesswork." *Eatman v. City of Moss Point*, 809 So.2d 591, 594 (Miss.2000).

The federal statute that empowers the Court to impose sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. §1927, is to be construed narrowly and treated with caution so that it does not unduly chill litigants' access to the judicial system. *Cypress-Fairbanks Independent School Dist. v. Michael F. By Barry F.*, 931 F.Supp. 474 (S.D.Tex.1995) affirmed as modified 118 F.3d 245, 152 A.L.R. Fed. 771, certiorari denied 118 S.Ct. 690, 522 U.S. 1047, 139 L.Ed.2d 636 (1998); *F.D.I.C. v. Calhoun*, 34 F.3d 1291 (5th Cir.1994); *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159 (10th Cir.1985); *Mone v. C.I.R.*, 774 F.2d 570 (2d Cir.1985). This statute is a complement to the Court's authority to impose sanctions under F.R.Civ.P. 11 and to the Court's inherent power to sanction bad faith conduct. *Chambers v. NASCO, Inc.*, 111 S.Ct. 2123, 501 U.S. 32, 115 L.Ed.2d 27, rehearing denied 112 S.Ct. 12, 501 U.S. 1269, 115 L.Ed.2d 1097 (1991); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 134 A.L.R. Fed. 661, rehearing denied, certiorari denied 112 S.Ct. 376, 502 U.S. 940, 116 L.Ed.2d 327 (1991).

I am not unmindful that there are circumstances that would support an inference that the litigation Renfroe initiated against the Rigsby sisters, *E. A. Renfroe & Company, Inc. v. Cori Rigsby, et al.*, Civil Action No. 06-AR-1752-S (N.D.Ala.2007), generated sufficient animosity between Richard Scruggs (who controlled the SKG) and those who control Renfroe (the owners) to make it plausible that Renfroe and the owners were named as defendants in this action, and in others, to retaliate for the Alabama action. And there are also circumstances that suggest it was Renfroe's pursuit of the Alabama action against the Rigsby sisters that caused the tentative cease-fire in the second phase of this litigation war to disintegrate. If the evidence in the record indicated conclusively that the SKG had adopted this type of "scorched earth" strategy, without any hope of succeeding on the merits of the claims against Renfroe, that would be a clear example of the type of willful and bad faith misconduct that would violate

F.R.Civ.P. 11, 28 U.S.C. §1927, and the MLAA.  But the evidence in this record is not sufficient to support such a finding.

Neither this action, in which Renfroe was dismissed as a defendant, nor any other of the many actions filed by the SKG against State Farm has ever gone to trial, and thus there has been no adjudication on the merits of the SKG's theory of recovery.  So the actions of the SKG must be evaluated on the strength of the pleadings (along with relevant discovery materials) under the standards of F.R.Civ.P. 12.  It is this standard that I must apply in evaluating the merits of this Renfroe motion.

In order to grant the relief Renfroe is requesting, I would have to first make a finding in favor of Renfroe concerning the merits of the allegations the SKG made against State Farm and Renfroe.  In essence, I would be obliged to find that Renfroe was entitled to the dismissal of these claims under the standards of F.R.Civ.P. 12.  In other words, as a threshold matter, Renfroe would be obliged to carry the burden of proving that it was entitled to judgment as a matter of law on the claims the SKG asserted against it.  After Renfroe carried this burden, I would then have to determine whether the allegations against Renfroe were made without a good faith expectation or a legitimate hope that the evidence would ultimately support a recovery.  It would require my finding that at the time the SKG filed this complaint against Renfroe there was insufficient evidence to make out a prima facie case against Renfroe.  I cannot make either of these findings based on the evidence now in the record.

Accordingly, Renfroe's motion for sanctions will be denied, and an appropriate order will be entered.

The two most important and obvious interests that must be balanced in considering requests for sanctions under the MLAA, 28 U.S.C. §1927, or F.R.Civ.P. 11 are a defendant's right to be free of groundless litigation and the plaintiff's right to present his claims through the courts without suffering a penalty in the event he is unable to marshal the evidence necessary to win his case. See: *Scruggs v. Saterfiel*, 693 So.2d 924 (Miss.1997).  The key is the issue of good faith, i.e. the question whether the specific claim in question was made with a reasonable belief that it was supportable in fact and in law, and in deciding this issue, the law gives the plaintiff, via the standards that apply to motions under F.R.Civ.P. 12, the benefit of the doubt.  Sanctions are not appropriate merely because a case is weak or doubtful or because the claimant does not ultimately prevail on the merits. *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 127 (Miss.1992).

No one is more supportive than this Court of all parties' rights to litigate their claims and defenses in good faith and to have full and free access to the courts to vindicate their rights and to seek appropriate remedies for infringement of those rights.  I am also well aware of the danger of groundless litigation that may be brought for an improper purpose, and where this type of misconduct is established, I would not hesitate to make use of my authority to impose appropriate sanctions.  Both of these

competing interests–the right to full and free access to the courts and the right to be free of groundless and vexatious litigation–are important considerations in the even-handed process our judicial system provides for the resolution of legitimate disputes.

In the hundreds of cases brought against State Farm by the SKG I have watched the property damage insurance claims, the contract claims at the heart these cases, being pushed off their rightful place at center stage by the escalating heat of the battles among State Farm, Renfroe and the SKG.  This conflagration has not advanced the interests of the policyholders nor the ultimate resolution of these cases.  In many instances, the litigants' interests have been among the battlefield casualties.  With the SKG having been disqualified as counsel in all the Court's remaining State Farm cases, it is my sincere hope that the type of normal, professional, and focused advocacy necessary to resolve the individual merits of the cases still outstanding will presently come to the fore.

**DECIDED** this 4th day of June, 2008.

                                                s/ L. T. Senter, Jr.
                                                L. T. SENTER, JR.
                                                SENIOR JUDGE